UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ERNEST ASHLEY OLIVER and<br>CHRISTINE THERESA OLIVER,<br><br>    *Debtors,*<br><br>_____<br>ERNEST A. OLIVER,<br><br>    *Plaintiff / Appellant,*<br><br>v.<br><br>JAMES R. PARIS, TRUSTEE,<br><br>    *Defendant / Appellee.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Bankruptcy Case No. 01-11696<br>*Chapter 7*<br><br><br><br><br><br>No. 1:05-cv-021<br>*Edgar / Carter* |

**MEMORANDUM**

This is a direct appeal from a final decision by the United States Bankruptcy Court. Appellant Ernest A. Oliver ("Oliver") brings this appeal pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001. Oliver appeals from the Bankruptcy's Court's approval of Trustee James R. Paris' ("Trustee") proposed compromise and settlement of a counterclaim lawsuit ("2001 Counterclaim") initiated by Oliver in 2001. After reviewing the record, the Court concludes that the Bankruptcy Court's decision is correct, and it will be **AFFIRMED**. The Court will **DISMISS** the appeal by Oliver.

**I.**     **Background and Facts**

The facts in this case are not in dispute. On March 14, 2001 Oliver and his wife (collectively "Debtors") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy

-1-

Code, 11 U.S.C. §§ 101 et seq. Pursuant to Federal Rule of Bankruptcy Procedure 1007 and 11 U.S.C. § 541, the Debtors filed amendments to their bankruptcy schedules and listed the 2001 Counterclaim, which was pending in the Circuit Court for Hamilton County, Tennessee, as property. Upon review, the Trustee realized that the 2001 Counterclaim was a restatement of alleged facts and intangible injuries against numerous defendants that Oliver had been raising in four separate legal actions since 1990. The Trustee negotiated a settlement offer of $25,000 from the defendants listed in the 2001 Counterclaim ("2001 Counterclaim Defendants"). The Trustee filed a motion with the United States Bankruptcy Court to approve the compromise pursuant to Federal Rule of Bankruptcy Procedure 9019. The Bankruptcy Court reviewed the parties' pleadings filed prior to the hearing and heard evidence in the case on two days in December 2004. It considered testimony of the Trustee and an attorney for one of the 2001 Counterclaim Defendants. It also considered exhibits introduced by the Trustee and Oliver, including pleadings relating to the prior causes of action brought by Oliver. [Exs. 1-16, 22]. The Bankruptcy Court further heard testimony and considered points raised by Oliver throughout the two-day hearing. In an opinion issued from the bench, the Bankruptcy Court approved the settlement. Oliver filed a timely appeal of that decision.

Due to the complexity of the facts alleged in the 2001 Counterclaim, the Court reviews the history of Oliver's related cases in both state and federal court. In 1990 Oliver filed a charge with the United States Department of Labor ("DOL") against his former employer, Hydro-Vac Services, Inc. ("Hydro-Vac"), for alleged retaliatory discharge in violation of various whistleblower protection provisions in several environmental protection statutes. The DOL entered a final decision and order in Oliver's favor on January 6, 1998. Oliver received an award of backpay damages. Neither party appealed the decision. [Court Doc. No. 20-1].

Oliver filed suit in this Court on August 26, 1991 alleging common law conspiracy, claims under 42 U.S.C. § 6972 of Resource Conservation and Recovery Act of 1976 ("RCRA") and claims under 42 U.S.C. § 1983 for denials of unspecified constitutional rights. [Ex. 4]. In that action Oliver named as defendants his former supervisor at Hydro-Vac, one other individual, Hydro-Vac, and over 80 other corporate defendants. Oliver alleged that the defendants conspired to engage in the unlawful disposal of hazardous and nonhazardous waste. He also claimed that the defendants conspired to "silenc[e] [ ] state and federal investigators so that the illegal dumping would go undetected" and to "silence, intimidate, fire, harass" Hydro-Vac employees so they would not "reveal the illegal activities to the media or appropriate authorities." *Id*. Oliver also claimed that he was unlawfully terminated from Hydro-Vac. *Id.* On August 10, 1992 this Court entered an order dismissing the federal claims with prejudice and dismissing the pendent state claims without prejudice for lack of subject matter jurisdiction. [Ex. 5]. On December 28, 1992, this Court entered an order imposing sanctions on Oliver and Oliver's attorney pursuant to Federal Rule of Civil Procedure 11. [Ex. 6]. This Court enjoined Oliver from filing any further pleadings in the case or from filing any further pleadings in the United States District Court for the Eastern District of Tennessee arising out of the same facts set forth in Oliver's federal lawsuit.

On August 26, 1991, the same day that he filed a lawsuit in this Court, Oliver filed a complaint in the Circuit Court of Hamilton County, Tennessee. [Ex. 1]. The action in state court was against the same defendants as the federal court action, and it alleged similar facts and raised substantially the same claims as the federal lawsuit, including conspiracy and a claim under 42 U.S.C. § 1983 for violation of unspecified constitutional rights. Oliver claimed that the defendants had conspired to dispose of hazardous waste illegally, had conspired to "silence" federal and state

officials so that the illegal activities would not be detected, and had conspired to "silence" Hydro-Vac employees. *Id.* Oliver also claimed that the defendants illegally terminated him from his position with Hydro-Vac. *Id.* On February 11, 1992, the Tennessee Circuit Court dismissed Oliver's action for lack of subject matter jurisdiction. [Ex. 2]. Oliver did not appeal the decision to dismiss his claims. [Ex. 3].

On August 22, 1996, Oliver filed another suit in this Court against multiple defendants, including one of the same defendants as in the prior actions, attorneys of defendants in the prior actions, various state and local officials, and various governmental entities. [Ex. 7]. Count I of this lawsuit complained of unlawful age and sex discrimination in employment based on events occurring at Chattanooga State Technical Community College ("CSTCC"). Oliver also complained of the way in which his discrimination claim was handled by the Tennessee Human Rights Office in Chattanooga. Count II of the complaint raised claims of conspiracy by government officials and by the federal district court judge who dismissed his federal claims, and it alleged violations to Oliver's civil rights under 42 U.S.C. § 1983 and § 1985. The facts alleged relating to the conspiracy count were similar to the facts alleged in the earlier state and federal actions. Oliver claimed that the Honorable James H. Jarvis of this Court issued a memorandum opinion and order that were based on a fraudulent affidavit and that Judge Jarvis participated in the conspiracy to violate the Oliver's civil rights. Oliver did not articulate what civil rights the defendants violated. *Id.* This Court determined that Count II of the complaint was a collateral attack on the prior judgment in the federal case and that it violated this Court's prior injunction. It granted a motion to dismiss Count II and allowed the case to proceed only upon Oliver's claims of age and sex discrimination against CSTCC. [Ex. 8]. This Court then entered an order granting summary judgment to CSTCC and

-4-

Case 1:05-cv-00021   Document 22   Filed 09/12/05   Page 4 of 19   PageID #: 5

dismissed the action with prejudice. [Ex. 9]. Because Oliver had failed timely to respond to the defendant's summary judgment motion due to an alleged court clerk misrepresentation, this Court allowed Oliver to submit a late response and file a motion for reconsideration. This Court then considered Oliver's substantive arguments on his claims and denied Oliver's motions. [Ex. 22]. Oliver appealed this decision to the Sixth Circuit, but then moved voluntarily to dismiss the appeal. The Sixth Circuit granted the motion to dismiss. [Ex. 11].

On January 22, 1997, Oliver filed a motion in this Court to set aside the prior orders in the 1992 federal action. [Ex. 12]. Oliver based the motion on the alleged ongoing conspiracy among defendants in his prior lawsuits, various governmental agencies, state and local government officials, and state and federal judges who had dismissed his prior lawsuits. Oliver claimed that the one-year statute of limitations for relief from a judgment pursuant to Federal Rule of Civil Procedure 60 was tolled by evidence of a continuing conspiracy. This Court denied Oliver's motion to set aside its prior orders. [Ex. 13]. Oliver appealed the dismissal of his motion to the Sixth Circuit. The Sixth Circuit affirmed the judgment of this Court. [Ex. 14]. Oliver filed a petition for a writ of certiorari with the Supreme Court of the United States, and the Supreme Court denied the petition. [Ex. 15].

In August of 2000, the City of Chattanooga brought suit in Tennessee State General Sessions Court against Oliver seeking approximately $1,200 for damages to city property. [Tr. 1, p. 136]. In February of 2001, Oliver instituted the 2001 Counterclaim against the City of Chattanooga and numerous third parties, including many parties who were defendants to his previous actions in state and federal court. [Ex. 16]. Many of Oliver's factual allegations in the 2001 Counterclaim were similar to the facts raised in his prior state and federal actions, including conspiracy to interfere with Oliver's employment and conspiracy to engage in illegal hazardous waste disposal. The 2001

Counterclaim raised two counts. Count I claimed a violation of Oliver's civil rights relating to the alleged conspiracy and was brought pursuant to 42 U.S.C. § 1983. Count II alleged two instances of libelous communications with Chattanooga media outlets regarding the validity of his accusations of conspiracy and illegal disposal of hazardous waste. According to the 2001 Counterclaim, the first occasion of alleged libel occurred in 1993 and the second occasion occurred in 2000. The 2001 Counterclaim sought damages in the amount of five million dollars for unspecified injuries. Due to the amount of damages alleged, the General Sessions Court transferred the case to the Circuit Court of Hamilton County, Tennessee.

## II.   Standard of Review

The bankruptcy court is the finder of fact. *In re Isaacman*, 26 F.3d 629, 631 (6th Cir. 1994); *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988). This Court is required to uphold the findings of fact made by the bankruptcy court unless those findings are determined to be clearly erroneous. The bankruptcy court's conclusions of law are reviewed *de novo* on appeal. Fed. R. Bankr. P. 8013; *In re 255 Park Plaza Associates Ltd. Partnership*, 100 F.3d 1214, 1216 (6th Cir. 1996); *In re Isaacman*, 26 F.3d at 631; *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991). When reviewing a bankruptcy court's decision relating to a compromise and settlement proposed by a trustee, "the Court reviews the order approving the compromise and settlement only for abuse of discretion." *In re Media Central, Inc. v. Jackson Family Television, Inc.*, 190 B.R. 316 (E.D. Tenn. 1994). This Court has authority to affirm, modify, or reverse the judgment of the bankruptcy court. This Court may also remand the case, if necessary, to the bankruptcy court for further proceedings. Fed. R. Bankr. P. 8013.

## III.   Standing

Although neither party has raised the issue of standing, the Court addresses whether Oliver has standing to appeal the Bankruptcy Court's decision to approve the Trustee's proposed compromise. "The rules of standing . . . are threshold determinants of the propriety of judicial intervention." *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214 (1st Cir. 2005) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 535, 546 n. 8, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). The Sixth Circuit has held that "[t]o appeal from an order of the bankruptcy court, appellants must have been directly and adversely affected pecuniarily by the order." *Fidelity Bank, National Association v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (citing *Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995); *Morgenstern v. Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir. 1990); *In re El San Juan Hotel*, 809 F.2d 151, 154-55 (1st Cir. 1987)). This is the "persons aggrieved" test for appellate standing in bankruptcy actions. *See In re Revco D.S.*, 898 F.2d at 498. " 'Persons aggrieved' must show the order of the bankruptcy court 'diminishes their property, increases their burdens, or impairs their rights.'" *In re Combustion Engineering, Inc.*, 391 F.3d at 214 (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 235 (3d Cir. 2000)). Federal courts have determined that "a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *In re El San Juan Hotel*, 809 F.2d at 154-55; *see also Marlar v. Marlar*, 252 B.R. 743, 748 (8th Cir. 2000). An exception to this rule exists if the debtor can demonstrate an ability to satisfy all debts from the estate and be left with a surplus. *Marlar*, 252 B.R. at 748-49; *In re El San Juan Hotel*, 809 F.2d at 155 n.6. In that case a debtor has a pecuniary interest in the outcome. *Marlar*, 252 B.R. at 748-49. Whether a debtor is a person aggrieved is a question of fact. *Fidelity Bank, National Association*, 77 F.3d at 882.

The record reveals that Oliver has an amount of secured and unsecured debt totaling $101,095.50. The Trustee negotiated a compromise for $25,000 from the 2001 Counterclaim Defendants to dismiss the 2001 Counterclaim with prejudice. The Bankruptcy Court approved the compromise. Oliver may have standing if he can demonstrate that the 2001 Counterclaim is worth more than the total amount of secured and unsecured claims of his creditors so that a surplus would remain. Due to the nature of the factual allegations, the claims asserted, and the injuries alleged in the 2001 Counterclaim, it is dubious that the Trustee would obtain more than $101,095.50 in damages by litigating the claim. However, due to Oliver's contention that the 2001 Counterclaim is worth up to five million dollars in damages, the Court proceeds to address the merits of Oliver's appeal.

**IV.     Issues on Appeal**

Although Oliver raises seven issues for discussion on appeal, the Court agrees with the Trustee that Oliver's issues IV through VII attempt to raise the merits of Oliver's various civil conspiracy claims against numerous individuals, including the Trustee and the United States Bankruptcy Judge who heard the Trustee's motion to approve the proposed compromise. These issues are not pertinent to a determination of whether the Bankruptcy Court's approval of the Trustee's proposed compromise was an abuse of discretion. Therefore, the Court declines to address the merits of Oliver's civil conspiracy claims. The Court agrees with the Trustee that the issues appropriate for this appeal are: (1) whether the Bankruptcy Court abused its discretion in approving the Trustee's proposed compromise of the 2001 Counterclaim pursuant to Federal Rule of Bankruptcy Procedure 9019(a); (2) whether the Bankruptcy Court abused its discretion in considering evidence necessary to determine whether the settlement was fair and equitable; and (3)

whether the Bankruptcy Court erred with respect to Oliver's attempts to seek testimony from Assistant United States Trustee, William Sonnenburg.

**V.   Analysis**

   *A.   Whether the Bankruptcy Court Abused Its Discretion in Approving the Proposed Compromise*

Federal Rule of Bankruptcy Procedure 9019(a) states in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The intention of a compromise or settlement "is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A&C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). Compromises "are favored in bankruptcy in order to minimize the cost of litigation to the estate and expedite its administration, and [ ] the approval of a compromise is within the sound discretion of the bankruptcy judge." *In re Edwards*, 228 B.R. 552, 568-69 (Bankr. E.D. Penn. 1998) (citing *In re Martin*, 91 F.3d 389, 392 (3d Cir. 1996)); *see also In re West Pointe Properties, L.P.*, 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000).

As stated by this Court, the question that the bankruptcy court must ask is "whether the proposed compromise is in the best interests of the estate." *In re Media Central v. Jackson Family Television, Inc.*, 190 B.R. 316, 320 (E.D. Tenn. 1994). The court has "an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." *In re West Pointe Properties, L.P.*, 249 B.R. at 281 (quoting *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)). The bankruptcy court must give some deference to the trustee's judgment regarding the proposed compromise and must not substitute its judgment for the trustee's judgment. *In re Media Central*, 190 B.R. at 321. Although the trustee is required to consider the debtor's interest in any surplus in the estate after

debts have been paid, *see* 11 U.S.C. § 726(a)(6), the Sixth Circuit has made clear that "[f]ully litigating a tort claim could easily exhaust assets that would otherwise go to creditors, and in the first instance the person vested with responsibility for deciding whether to settle or fight is the trustee, not the debtor." *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988), *cert. denied, sub nom. Bauer v. Waldschmidt*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). Another "legitimate reason to settle is to avoid the costs of developing a weak case." *In re Paolino*, 87 B.R. 8, 10 (E.D. Penn. 1988).

Federal courts have determined that several factors should be considered when reviewing whether a settlement is in the best interests of the estate. This Court has stated that "the factors to consider are 'the probabilities of ultimate success in the litigation, the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting any judgment that might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *In re Media Central*, 190 B.R. at 320 (quoting *In re Tennol Energy Co.*, 127 B.R. 820, 828 (Bankr. E.D. Tenn. 1991)); *see also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). When analyzing the factors "the bankruptcy court should canvass the issues and determine whether the proposed settlement falls within the range of reasonableness in the case, but without trying the case or otherwise deciding the issues of law and fact presented." *In re Media Central*, 190 B.R. at 321 (citing *Tennol Energy Co.*, 127 B.R. at 828); *see also W.T. Grant Co. v. Rodman*, 699 F.2d 599, 608 (2d Cir. 1983).

After reviewing the record and the pertinent factors, the Court concludes that the Bankruptcy Court did not abuse its discretion in approving the Trustee's proposed compromise.

-10-

### 1. Probability of Success in the Litigation

The Bankruptcy Court heard extensive testimony regarding Oliver's prior state and federal claims, including testimony regarding the repetitive nature of the alleged facts and defendants. [Tr. I, pp. 66-96]. The Bankruptcy Court also listened to testimony from both the Trustee and an attorney for one of the 2001 Counterclaim Defendants regarding the potential legal defenses to the claims raised in the 2001 Counterclaim. [Tr. I, pp. 96-98, 134-144]. The Bankruptcy Court heard testimony regarding the Trustee's investigation of the validity of the factual allegations made in the 2001 Counterclaim. [Tr. I, p. 136-141]. During the Trustee's settlement negotiations, attorneys for the 2001 Counterclaim Defendants "vigorously disputed the validity of the claims" and indicated to the Trustee that they felt they had "strong legal defenses." [Tr. I, p. 141]. The attorneys indicated a willingness to settle for $25,000 "to buy the peace" of the 2001 Counterclaim Defendants. *Id.*

During the bankruptcy hearing, the Trustee entered testimonial evidence regarding possible legal defenses to the 2001 Counterclaim. The defenses raised included res judicata, collateral estoppel, standing, statute of limitations, and possible truthfulness of the allegedly libelous communications. [Tr. I, pp. 65-66,96-98]. The attorney for one of the 2001 Counterclaim Defendants testified that even if Oliver prevailed on the arguments relating to the defenses, there would "[m]ost definitely" still be factual issues present. [Tr. I, p. 97].

The Court finds that the Trustee's doubts regarding the probability of a successful outcome for the 2001 Counterclaim are well-founded. The defenses of res judicata and collateral estoppel alone have the potential to preclude Oliver from prevailing on the merits of his 2001 Counterclaim. Tennessee courts have defined res judicata and collateral estoppel:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could

> have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

*Richardson v. Tennessee Board of Dentistry*, 913 S.W.2d 446 (Tenn. 1995) (quoting *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989)). Under Tennessee law res judicata also applies to "all claims and issues which were relevant and which could reasonably have been litigated in a prior action." *American National Bank & Trust Co. v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). Oliver argues that the court decisions in his prior cases were based on fraudulent evidence and/or were due to the collusion of the judges involved. However, the Court finds no evidence in the record of fraud on the Court or of conspiracy. Oliver's contentions appear to rest solely on the fact that prior courts did not agree with his position. Tennessee courts have made clear that res judicata "is based on the public policy favoring finality in litigation and does not depend upon correctness or fairness, as long as the underlying judgment is valid." *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. App. 1990). Oliver's contentions regarding the incorrectness of the prior judgments is without merit.

Oliver argues that evidence of an ongoing conspiracy is present due to the ultimate criminal conviction of his former supervisor at Hydro-Vac for violations of environmental laws. The Trustee testified regarding the indictment of Oliver's former supervisor and indicated that the Trustee originally felt that the indictment might demonstrate the validity of Oliver's claims. However, upon researching the facts behind the indictment, the Trustee learned that the former supervisor pled guilty to environmental violations in 1997 through 2000. These violations occurred several years following Oliver's complaints of violations. [Tr. I, pp. 138-41].

-12-

Based on the similarity of facts raised in Oliver's many prior lawsuits and claims, the Court finds that the Bankruptcy Court was well within its discretion to approve the proposed compromise due to the possible defenses of res judicata and collateral estoppel.

Even if the Trustee could overcome the legal hurdles posed by the doctrines of res judicata and collateral estoppel, other legal defenses inhibit the chances of the success of the 2001 Counterclaim. Under Tennessee law to have standing to bring a legal action "a party must demonstrate (1) that it sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is apt to be redressed by a remedy that the court is prepared to give." *City of Chattanooga v. Davis*, 54 S.W.2d 248 (Tenn. 2001) (quoting *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992)). Oliver alleges various vague injuries due to allegedly libelous communications, such as "great distress, embarrassment, humiliation and harm to his reputation in the community." [Ex. 16, p. 4]. It is not clear, however, from the 2001 Counterclaim under what law Oliver is entitled to remedy for these alleged injuries. With respect to his 42 U.S.C. § 1983 claims, it is not clear what civil rights Oliver believes the defendants violated. If Oliver cannot demonstrate a distinct injury caused by the defendants which may be redressed by a Tennessee court, then the Trustee does not have standing to pursue the 2001 Counterclaim. Based on the record, it appears that lack of standing may be a legitimate defense for the 2001 Counterclaim Defendants.

The 2001 Counterclaim may also face legitimate challenges based on statute of limitations arguments. Oliver seeks damages based on an alleged conspiracy that began in 1990 and an alleged libelous communication distributed to the media in 1993. Tennessee law provides that libel actions, as well as civil actions brought under federal civil rights statutes shall be brought within one year

after accrual of the cause of action. Tenn. Code Ann. § 28-3-104. Tennessee courts have determined that the statute of limitations for civil conspiracy will be the same as the statute of limitations for the underlying tort alleged. *See e.g. Braswell v. Carothers, III*, 863 S.W.2d 722, 728 (Tenn. Ct. App. 1993). Due to the lapse of time between the injuries Oliver alleges and the filing of his 2001 Counterclaim, it appears that the Trustee would face a potential defense of statute of limitations bar with respect to at least some of Oliver's claims. Finally, the 2001 Counterclaim Defendants could also have a potential defense of truth with respect to the allegedly libelous statements. *See Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978).

> The Bankruptcy Court concluded that :
>
> There is no doubt to this Court that Mr. Oliver feels passionate about the issues he has raised. Feelings of passion, however, do not amount to proof. Mr. Oliver has been involved in ongoing litigation involving his allegations of this contamination and cover-up since the early 1990s. . . . In order to be successful against these various defendants, he would have to attack each of those–successfully attack each of those prior decisions on a collateral basis before he could even reach a trial.

[Tr. II, pp. 51-52]. Even if the Trustee managed to get past all of the anticipated initial defenses, it is clear that the 2001 Counterclaim Defendants "vigorously dispute[] the validity of the claims." [Tr. 1, p. 141]. Based on its review of the record, the Court finds that the factor of the likelihood of success in the litigation weighs heavily in favor of the Trustee's proposal to compromise.

### 2. The Complexity, Expense, and Likely Duration of Litigation

The Court finds that this factor also weighs in favor of the Trustee's proposal to compromise. The Bankruptcy Court found that the "estate has no funds with which to undertake" litigating the 2001 Counterclaim. [Tr. II, p. 52]. In addition, the Trustee testified that the 2001 Counterclaim presented:

-14-

> the kind of case I wouldn't take because I couldn't afford to take it. It would take too long to ever get anywhere once you got past the legal defenses. There was a discussion at that meeting along the lines that it would take two or three years to even get past – even get a trial because you would have to go through the appellate stage to even hope to get a trial.

[Tr. 1, p. 138]. The Trustee further testified that he believed the 2001 Counterclaim presented an "uphill battle" and "that there were incredible issues involved." *Id.*

Oliver contends that there were three attorneys willing to take his case on a contingency basis. However, Oliver no longer has control over the 2001 Counterclaim. A Chapter 7 bankruptcy trustee has the right to select his attorney with bankruptcy court approval. *See* 11 U.S.C. § 327(a). The Trustee also has the right to decide whether to settle a claim or to litigate. *See Bauer*, 859 F.2d at 441. As the Trustee points out, Oliver's contention that an attorney might have taken the case on a contingency basis would not alleviate the estate from paying for the costs of the litigation. [Court Doc. No. 20-1, p. 13]. These costs could include costs of court reporters for depositions, photocopying charges, and expert witness fees. The 2001 Counterclaim named numerous parties, government entities, and law firms as defendants. It also made allegations regarding numerous other state and local public officials. The 2001 Counterclaim Defendants vigorously disputed the facts alleged in the 2001 Counterclaim and could be expected to defend their position with vehemence. Dealing with numerous defendants who deny the substantive allegations in the 2001 Counterclaim could reasonably be expected to be costly. Based on his review of the complexity and expense of the 2001 Counterclaim, the Trustee made the decision to negotiate a full settlement with the 2001 Counterclaim Defendants. A "legitimate reason to settle is to avoid the costs of developing a weak case." *In re Paolino*, 87 B.R. at 10. The Bankruptcy Court approved this determination. This Court

-15-

concludes that the Bankruptcy Court did not abuse its discretion in finding that this factor weighs in favor of approval of the proposed settlement.

        3.      <u>Difficulties in Collecting Any Judgment that Might Be Obtained</u>

The Court finds no evidence in the record regarding this factor. The Court will assume that this factor weighs in Oliver's favor and that the Trustee would be able to collect any judgment on the 2001 Counterclaim from the numerous 2001 Counterclaim Defendants.

        4.      <u>Other Factors Relevant to a Full and Fair Assessment of the Wisdom of the Proposed Compromise</u>

The Bankruptcy Court held that the proposed settlement was in the best interest of the estate and approved it. Whether the proposed compromise is in the best interest of the estate is the appropriate question to ask. *In re Media Central, Inc.*, 190 B.R. at 320. The Bankruptcy Court found that "the settlement will result at approximately a 50 percent distribution to creditors. It is important to note, from the Court's standpoint, that no creditor has objected to the settlement, only the debtor." [Tr. II, p. 52]. The Bankruptcy Court further found that Oliver's purpose in attempting to pursue litigation of the 2001 Counterclaim was "to correct a perceived wrong" without having "the interest of his creditors at heart." [Tr. II, p. 53]. The majority of Oliver's testimony in the bankruptcy hearing relates to the merits of the allegations in the 2001 Counterclaim and Oliver's desire to expose the substance of his conspiracy allegations once again in court. [*See e.g.* Tr. II, pp. 24-32, 40-49]. The Court finds that the Bankruptcy Court did not abuse its discretion in concluding that this factor weighs in favor of approval of the proposed compromise.

The record reveals that three of the four factors to be analyzed in determining whether the proposed settlement is fair and equitable weigh heavily in favor of approval of the proposed

settlement. The Court therefore concludes that deference to the Bankruptcy's Court use of discretion is appropriate.

      *B.*  *Whether the Bankruptcy Court Abused its Discretion in Considering Evidence Necessary to Determine Whether the Settlement Was Fair and Equitable*

As the Trustee properly notes the bankruptcy court should "canvass the issues and determine whether the proposed settlement falls within the range of reasonableness in the case, but without trying the case or otherwise deciding the issues of law and fact presented." *In re Media Central*, 190 B.R. at 321 (citing *Tennol Energy Co.*, 127 B.R. at 828); *see also W.T. Grant Co.*, 699 F.2d at 608; *In re Drexel Burnham Lambert Group*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). The bankruptcy court is not required to conduct a "mini-trial" on the merits before approving a compromise. *See In re Grot*, 291 B.R. 204, 208 (Bankr. M.D. Ga. 2003). "Where the evidence on the issue of a compromise is thorough and comprehensive, and the court is familiar with the entire record and touches all material bases of any objections, the court's approval of a compromise does not constitute an abuse of discretion." *Id. See also Depoister v. Holloway Foundation*, 36 F.3d 582, 586-88 (7th Cir. 1994).

After reviewing the record, the Court finds that the Bankruptcy Court properly canvassed the issues and determined that the proposed settlement falls within the range of reasonableness. The Bankruptcy Court's opinion demonstrates that it considered three of the four factors pertinent to a determination of whether the proposed settlement was fair and equitable. [Tr. II, pp. 49-53]. Oliver argues that he was not allowed to testify or present evidence. The Court finds this contention without merit. The Bankruptcy Court allowed Oliver to testify at length during the two partial-day hearing. [Tr. I, pp. 107, 108; Tr. II, pp.12, 30, 31, 40, 43, 44, 46, 48]. The Bankruptcy Court also considered Oliver's 29 page legal memorandum restating his arguments. [Tr. II, p. 40]. The

-17-

Case 1:05-cv-00021 Document 22 Filed 09/12/05 Page 17 of 19 PageID #: 18

Bankruptcy Court also allowed Oliver to attempt properly to introduce exhibits and to cross-examine the Trustee's witness. [Tr. I, p. 99-130, 104-107, 112, 115-120; Tr. II, pp. 34-35].

Oliver complains that he was not allowed to cross-examine the Trustee. However, he has not indicated what questions he would have asked the Trustee that would have changed the view of the Bankruptcy Court with respect to approval of the proposed settlement. Federal Rule of Bankruptcy Procedure 9005 states that Federal Rule of Civil Procedure 61 applies to cases under the Bankruptcy Code. Fed. R. Bankr. P. 9005. Federal Rule of Civil Procedure 61 states that:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61. Even if the Bankruptcy Court erred in refusing to allow Oliver to cross-examine the Trustee, Oliver fails to demonstrate how this error is "inconsistent with substantial justice." Nor does Oliver demonstrate how his cross-examination of the Trustee would have changed the outcome of the hearing. *See New Concept Housing, Inc. v. Poindexter*, 951 F.2d 932, 939 (8th Cir. 1991). The Court concludes that the Bankruptcy Court did not abuse its discretion in limiting evidence in the bankruptcy hearing to that which was relevant to determining whether the Trustee's proposed settlement was fair and equitable.

        *C.     Whether the Bankruptcy Court Erred With Respect To Oliver's Attempts To Seek Testimony from an Assistant United States Trustee*

Oliver claims that the Bankruptcy Court interfered with his right to call Assistant United States Trustee, William Sonnenburg, to testify. However, the record reveals that Oliver never issued a subpoena for Mr. Sonnenburg's appearance. [Tr. 6; Court Doc. No. 16, p. 26]. Because Oliver

Case 1:05-cv-00021   Document 22   Filed 09/12/05   Page 18 of 19   PageID #: 19

did not properly attempt to call Mr. Sonnenburg as a witness, the Court concludes that the Bankruptcy Court did not abuse its discretion regarding Oliver's attempts to call Mr. Sonnenburg as a witness. *See* Fed. R. Bankr. P. 9016; Fed. R. Civ. P. 45.

**VI.    Conclusion**

For the reasons stated above, the Court will affirm the Bankruptcy Court's order approving the settlement proposed by the Trustee.

A separate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE